UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**JACLYN MARIE OKEEFE,**

        **Plaintiff,**

**v.**                                                             **Case No: 6:14-cv-1410-Orl-GJK**

**COMMISSIONER OF SOCIAL SECURITY,**

        **Defendant.**

## MEMORANDUM OF DECISION

Jaclyn Marie Okeefe (the "Claimant"), appeals from a final decision of the Commissioner of Social Security (the "Commissioner") denying her applications disability insurance benefits ("DIB") and Supplemental Security Income ("SSI"). Doc. No. 1. Claimant alleges an onset of disability as of July 15, 2006, and Claimant is insured for DIB through June 30, 2008. R. 27, 299-300, 303. Claimant alleges disability primarily due to anxiety, depression, panic disorder, agoraphobia, chronic back pain, fibromyalgia, and attention deficit disorder. R. 78, 99, 112, 125, 141, 153, 167, 346. Claimant argues that the Administrative Law Judge (the "ALJ") erred by failing to demonstrate good cause, supported by substantial evidence, for giving little weight to the opinion of Claimant's long-term treating psychiatrist and licensed mental counselor, Dr. Gary Mosher and Ms. Anne Wolfram (R. 613-14). Doc. No. 19 at 14-22. Claimant also argues that the Appeals Counsel erred by failing to review the ALJ's decision because new and material evidence submitted by Claimant for the first time to the Appeals Council renders the ALJ's decision erroneous and contrary to the weight of the evidence. Doc. No. 19 at 28-29. As explained below, Claimant's arguments are related because the ALJ's decision to give little weight to the opinion of

Dr. Mosher and Ms. Wolfram was based, in large part, on the lack of treatment records from them during the relevant time period. *See* R. 39-43. Claimant submitted treatment records from 19 therapy sessions with Ms. Wolfram and 5 treatment notes with Dr. Mosher, during the relevant period, to the Appeals Council. R. 661-79.[1] For the reasons set forth below, the Commissioner's final decision is **REVERSED** and **REMANDED** for further proceedings.

I.      THE ALJ'S FIVE-STEP DISABILITY EVALUATION PROCESS.

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). In *Doughty v. Apfel*, 245 F.3d 1274 (11th Cir. 2001), the Eleventh Circuit explained the five-step sequential evaluation process as follows:

> In order to receive disability benefits, the claimant must prove at step one that he is not undertaking substantial gainful activity. At step two, the claimant must prove that he is suffering from a severe impairment or combination of impairments. At step three, if the claimant proves that his impairment meets one of the listed impairments found in Appendix 1, he will be considered disabled without consideration of age, education, and work experience. If the claimant cannot prove the existence of a listed impairment, he must prove at step four that his impairment prevents him from performing his past relevant work. At the fifth step, the regulations direct the Commissioner to consider the claimant's residual functional capacity, age, education, and past work experience to determine whether the claimant can perform other work besides his past relevant work.

*Id*. at 1278 (citations omitted). The steps are followed in order. If it is determined that the claimant is not disabled at a step of the evaluation process, the evaluation will not go on to the next step.

---

[1] Claimant also argues that the ALJ erred by: giving greater weight to the opinions of a one-time examining physician and to two non-examining physicians than to Dr. Mosher; and failing to properly consider Claimant's need for a highly structured setting at home when determining whether Claimant met or equaled a listing, and in determining Claimant's residual functional capacity. Doc. No. 19 at 19-20, 31-33. However, the issues discussed below are dispositive.

## II.     STANDARD OF REVIEW.

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *accord Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards*, 937 F.2d at 584 n.3; *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The District Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings); *Parker v. Bowen*, 793 F.2d 1177, 1180 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied). The District Court "'may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner].'" *See Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

## III.    ANALYSIS.

At the center of this dispute is the ALJ's handling of of the opinion evidence from Claimant's long-term treating psychiatrist and mental health counselor, Dr. Mosher and Ms.

Wolfram, and the Appeals Council decision not to review the ALJ's decision after Claimant submitted new evidence from those treating sources. Dr. Mosher and Ms. Wolfram are the only treating mental health professionals, who provided opinion evidence in this case. R. 1-685. A one-time examining psychologist provided a general intellectual and general personality evaluation, and two non-examining physicians also provided opinions in this case. R. 102-105; 107-09; 148-51 571-73.[2]

---

[2] On April 27, 2011, Dr. Scott M. Kaplan, Psy. D., conducted an examination of Claimant on behalf of the Department of Education, Vocational Rehabilitation Services. R. 571-73. Dr. Kaplan diagnosed Claimant with social phobia, panic disorder without agoraphobia, attention deficit disorder, depressive disorder, average intellectual functioning, and back and shoulder problems. R. 572. His recommendations were as follows:

> [F]ormal mental health treatment is recommended at the present time. Psychotropic medications are recommended due to . . . Anxiety, Depression, and ADHD, Predominately Inattentive Type, and associated features. Formal outpatient individual psychotherapy is also recommended and should focus on reducing Depression and Anxiety as well as increasing her coping skills and increasing her socialization skills. The utilization of a cognitive-behavioral therapeutic orientation would appear most beneficial. She is an adequate candidate for a traditional 2 and/or 4 year academic environment due to her Average intellectual functioning. However, <u>she will require specific accommodations in this type of setting due to the above referenced psychological diagnoses and associated symptomatology</u>. She is equally suited for an environment emphasizing verbal skills relative to one emphasizing visual motor and hand/eye coordination. This is secondary to both her Average verbal comprehension score and perceptual reasoning score. However, <u>she should not be placed in any environment emphasizing socialization skills due to the above referenced Social Phobia and Panic Disorder</u>. She is clearly better suited to work independently. <u>She is likely to decompensate in any environment that is high stress or high demand due to her psychological condition</u>. Consequently, <u>she is likely to require a relatively structured work setting</u>. One must take her physical limitations into account with regard to job placement. That is, she should not be placed in any labor intensive position due to her orthopedic condition. Lastly, she will require job training, job placement, guidance and counseling, and career exploration. She may also require medical restoration due to the above referenced orthopedic concerns. In summary she is a viable candidate for [vocational rehabilitation] services and activities if she is eligible and so qualifies. . . . <u>Her prognosis is guarded. However, the above referenced treatment modalities should prove to be of clinical benefit</u>.

R. 572 (emphasis added). Thus, Dr. Kaplan opined that Claimant is a candidate for vocational rehabilitation services if she receives psychotropic medication and individual outpatient therapy, but she will require specific accommodation in traditional 2 or 4 year academic settings, she should not work in any position requiring socialization skills, she is likely to decompensate in any high stress or high demand environment, and she requires a relatively structured work setting. R. 572. Dr. Kaplan further opined that Claimant's prognosis is guarded, but further psychiatric treatment should benefit her. R. 572.

The record before the ALJ contains no treatment records from Claimant's individual therapy sessions with Ms. Wolfram. R. 592-602. It contains fourteen (14) treatment notes from Dr. Mosher from August 13, 2004 through November 17, 2011. R. 597-602. From July 21, 2010 through November 17, 2011, Claimant treated with Dr. Mosher nine (9) times. R. 597-601. The record also contains logs showing whether Claimant appeared for individual therapy sessions or for medication management services. R. 592-96. Dr. Mosher's November 17, 2011 treatment note, the last treatment note in the record before the ALJ, provides that Claimant had a blunted affect, depressed mood, logical thought process, no delusions, poor judgment, fair insight, suicidal ideation but no plan or intent, and had questionable opiate abuse. R. 597. Dr. Mosher changed her medication regimen. R. 597.

On March 7, 2013, Dr. Mosher and Ms. Wolfram provided a Medical Opinion Re: Ability to Do Work-Related Activities (Mental). R. 613-14. The opinion is presented on a check-box form. R. 613-14. Dr. Mosher and Ms. Wolfram opine that Claimant has "no useful ability to function" in the following areas: traveling in unfamiliar places; and using public transportation. R. 614. They opine that Claimant is "unable to meet competitive standards" in the following areas: understanding and remembering very short and simple instructions; maintaining regular attendance and being punctual within customary tolerances; sustaining an ordinary routine without special supervision; working in coordination or proximity to others without being unduly distracted; making simple work-related decisions; completing a normal workday and workweek without interruptions from psychologically based symptoms; performing at a consistent pace without an unreasonable number and length of rest periods; asking simple questions or requesting assistance; understanding and remembering detailed instructions; carrying out detailed instructions; setting realistic goals or making plans independently of others; and dealing with stress

of semiskilled and skilled work. R. 613-14.[3] Dr. Mosher and Ms. Wolfram opine that Claimant is "seriously limited" in the ability to: remember work-like procedures; carry out very short and simple instructions; maintain attention for two hour segments; accept instructions and respond appropriately to criticism from supervisors; respond appropriately to changes in a routine work setting; deal with normal work stress; and adhere to basic standards of neatness and cleanliness. R. 613-14.[4] They also opine that Claimant has a "limited but satisfactory" ability to: get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; be aware of normal hazards and take appropriate precautions; interact appropriately with the general public; and maintain socially appropriate behavior. R. 613-614.[5] Dr. Mosher and Ms. Wolfram state the basis for their opinion is the Claimant's "severe anxiety prevents her from performing in [the] above areas." R. 614.  Finally, they opine that Claimant's impairments will cause her to miss work more than four days per month. R. 614.

On March 11, 2013, the ALJ held a hearing in this case.  Claimant testified that she continues to treat with Dr. Mosher, roughly every three months, and last saw him in January of 2013. R. 75. The ALJ noted that the last treatment note from him in the administrative record apart from the opinion, was from November of 2011. R. 75. Claimant's attorney stated that he submitted treatment records from Dr. Mosher and Ms. Wolfram from 2012 and he was attempting to obtain more recent treatment records. R. 76. The ALJ confirmed that the administrative record

---

[3] The opinion defines "unable to meet competitive standards" as "your patient has noticeable difficulty (e.g., distracted from job activity) from 21 to 40 percent of the workday or work week." R. 613.

[4] The opinion defines "seriously limited" as "your patient has noticeable difficulty (e.g., distracted job activity) from 11 to 20 percent of the workday or work week." R. 613.

[5] The opinion defines "limited but satisfactory" as "your patient has noticeable difficulty [but] no more than 10 percent of the workday or work week." R. 613.

did not contain any of Dr. Mosher or Ms. Wolfram's treatment records after November 2011.  R. 77.

On May 31, 2013, the ALJ issued a decision finding Claimant not disabled. R. 25-50. At step-two of the sequential evaluation process, the ALJ found that Claimant has the following severe impairments: "mild obesity, panic disorder without agoraphobia, social phobia, dysthymic disorder, major depressive affective disorder, and ADHD." R. 27. The ALJ made the following residual functional capacity assessment ("RFC"):

> After careful consideration of the entire record, [the ALJ] find[s] that the claimant has the [RFC] to perform light work . . . defined as lifting/carrying twenty pounds occasionally and ten pounds frequently.  In an eight-hour day, she can sit six hours and stand/walk six hours.  She can occasionally stoop and crouch.  <u>She is limited to simple, routine, and repetitive tasks in a low stress job, which is defined as occasional changes in work setting and not being able to perform production pace work like assembly line work but she can perform goal-orientated work that can be completed by the end of the work shift.  She can have occasional interaction with co-workers and brief/superficial [interaction] with the general public</u>.

R. 32 (emphasis added).  Thus, while the ALJ's RFC does contain non-exertional limitations related to Claimant's mental impairments, it is less restrictive than the limitations contained in Dr. Mosher and Ms. Wolfram's opinion.  *Compare* R. 32 *with* R. 613-14.

In the decision, the ALJ provides a summary of the evidence and the ALJ's reasons for making the above-quoted RFC determination.  R. 32-48.  While discussing the Claimant's testimony, the ALJ states:

> The claimant testified she still sees Dr. Mosher and last saw him in January 2013. . . .  However, the overall evidence indicates noncompliance with treatment.  She has only sporadically attended therapy and she was not always compliant with medications or follow-up appointments with her psychiatrist.  Mental health treatment such as therapy and psychiatric medications must be followed through with consistently [sic] I order to be effective.  The claimant is not doing what she can to improved [sic] her anxiety yet to obtain disability benefits, a claimant must follow treatment

> prescribed if the treatment would restore the claimant's ability to work (20 C.F.R. §§ 404.1530, 416.930).

R. 34. With respect to Dr. Mosher and Ms. Wolfram's treatment records, the ALJ states:

> On July 21, 2010, the claimant saw Dr. Gary Mosher, a psychiatrist, at Parkway for medication. She had previously received treatment in 2004 and 2005 for dysthymic disorder but she had not been seen for a long time. She had been in Maine getting a culinary degree. She was prescribed Adderall to help focus and for weight loss. She felt Adderall was effective. She complained of depression and migraines. She was looking for work but she had been unsuccessful. She denied suicidal or homicidal ideation. She was sleeping and eating well. Her affect was appropriate with no psychosis. Dr. Mosher diagnosed her with major depressive affective disorder (recurrent episode, mild), ADHD, migraine, and mild obesity. He prescribed medications.
>
> The claimant continued medication management with Dr. Mosher every few months in 2010. She still complained of mild, persistent depression and anxiety but her depression was much better by October 2010. Her panic attacks were less frequent. She had thought about working at Publix Bakery but she was anxious about having to make announcements over the intercom to customers. She complained of not being focused. She was cooking at home and helping with chores. Dr. Mosher also diagnosed her with phobic disorder.
>
> On March 2, 2011, the claimant told Dr. Mosher she was no longer helping around house and she was not leaving the house. She turned down a job at Winn Dixie. She was quiet in office. Her medications were adjusted. She was referred to vocational rehab. Two months later, she was in good spirits. She had kept her appointment at vocational rehab and felt it would be helpful. She had no recent panic attacks but she was using Xanax before any outings. She indicated sleeping twenty-six hours straight at her next appointment and she had missed her follow up appointment with vocational rehab. She acknowledged some symptoms of abuse as she was using Oxycodone for "chronic pain" and taking Xanax three to four times per day. Dr. Mosher diagnosed her with rule out opioid abuse. She had gained weight. She was being treated with Adderall 20 mg l/2 tablet twice daily, fluoxetine 20 mg three tablets each morning, and Xanax 0.5 mg one or two tablets twice daily.

> On October 11, 2011, the claimant saw Dr. Mosher with her boyfriend. She had stress related to her mother who threated [sic] to stab her. She had gone to vocational rehab and she was sporadically complaint [sic] with Adderall due to a shortage of medication. Her mental status exam was normal except for anxious mood. She denied suicidal or homicidal ideation. <u>The last treatment note is from November 17, 2011</u>. She alleged sleeping thirty-six hours straight but she was still taking Oxycodone. She had no motivation. Her mental status exam was normal except for depressed mood and blunted affect. She had some reported suicidal ideation but no plan or intent. Her judgment was poor. Dr. Mosher indicated questionable opiate and Adderall abuse issues. <u>The treatment log also mentioned individual therapy/counseling with Anne Wolfram, a LMHC, in 2010 but there are no treatment notes from these visits. She was seen seven times in 2010 and three times in 2011 for therapy. She had several now [sic] shows and cancelations for both therapy and medication management</u>.

R. 39-40 (emphasis added and internal citations omitted). Thus, the ALJ notes that the last treatment record from Dr. Mosher was in 2011 and the record contains no treatment notes from Ms. Wolfram. R. 40. The ALJ later states that Claimant's counsel referred to treatment records, which occurred in 2012 and 2013, but since those records where not received, the ALJ did not consider them in rendering the decision. R. 41. The ALJ further states that Claimant's allegations regarding her mental limitations are given some weight because her last treatment with Dr. Mosher was in 2011 and although Claimant "reported seeing Dr. Mosher again in November 2012 and twice in 2013 . . . there are no treatment notes from these visits." R. 42.

The ALJ provides an accurate summary of Dr. Mosher and Ms. Wolfram's March 7, 2013 opinion. R. 43. The ALJ gives the opinion little weight, stating:

> <u>While he does have a treating relationship with the claimant, the actual treatment has been quite sporadic. His last treatment note with the claimant was on November 11, 2011 and there are no treatment notes from Ms. Wolfram in the record</u>. The overall medical evidence and treatment does not support the extreme findings calling the remainder of Dr. Mosher's findings into question. The claimant indicated her most significant problem was

>social anxiety yet this was the area Dr. Mosher indicated the claimant had the least problems. Dr. Mosher merely checked off boxes on a form and did not provide a narrative report containing specific clinical findings. His opinion is without substantial support from the other evidence of record, including his own treatment notes. Dr. Mosher apparently relied quite heavily on the subjective report of symptoms and limitations provided by the claimant, and seemed to uncritically accept as true most, if not all, of what the claimant reported. Yet, as explained elsewhere in this decision, there exist[s] good reasons for questioning the reliability of claimant's subjective complaints.

R. 43 (emphasis added). Thus, the ALJ provided the following four (4) reasons for giving their opinions little weight: (1) Claimant's treatment was sporadic as the last treatment record from Dr. Mosher was in November of 2011 and there are no treatment records from Ms. Wolfram; (2) the overall medical record does not support their "extreme" opinions; (3) the opinion is on a check-box form without a narrative report containing specific clinical findings; and (4) Dr. Mosher apparently relied too heavily on the Claimant's subjective complaints, which are not credible.

As detailed above, when discussing the Claimant's mental impairment allegations at the hearing and in the decision the ALJ repeatedly references the lack of any treatment notes from Dr. Mosher after November 2011 and any treatment records from Ms. Wolfram. *See supra* pp. 6-10. Indeed, the ALJ relies on the lack of such records as the first basis for giving their opinion little weight. R. 43. However, Claimant submitted records reflecting 19 therapy sessions with Ms. Wolfram from August 2, 2004 through October 24, 2012, and 5 treatment records with Dr. Mosher from February 16, 2012 through January 15, 2013 to the Appeals Council. R. 661-68, 675-79. Thus, although those records where not before the ALJ, their presence before the Appeals Council clearly refute one of the primary bases the ALJ relied upon as support for giving Dr. Mosher and

Ms. Wolfram's March 7, 2013 opinion little weight (R. 43), and which the ALJ also repeatedly relies upon throughout the decision (*see supra* pp. 6-10).[6]

Claimants may generally present new evidence at each stage of the administrative proceedings. 20 C.F.R. §§ 404.900(b), 416.1470(b); *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1261 (11th Cir. 2007); *Hearn v. Comm'r of Soc. Sec.*, 619 F. App'x 892, 893-94 (11th Cir. Jul. 31, 2015) (unpublished). If additional evidence is presented for the first time to the Appeals Council, it must consider the evidence if it is "new and material" evidence chronologically relating "to the period on or before the date of the [ALJ's] hearing decision." 20 C.F.R. §§ 404.970(b), 416.1470(b). New evidence is material if "there is a reasonable possibility that it would change the administrative result." *Hyde v. Bowen*, 823 F.2d 456, 459 (11th Cir. 1987). On appeal, this Court will reverse only if the new and material evidence renders the ALJ's decision erroneous. *Ingram*, 496 F.3d at 1262.[7]

In this case, the Appeals Council considered the Claimant's additional evidence, but determined that it "does not provide a basis for changing the Administrative Law Judge's decision," and, therefore, the Appeals Council denied Claimant's request for review. R. 1-2, 5, 661-685. The Court must now determine whether there is a reasonable possibility that the new evidence would change the administrative result and whether the evidence renders the ALJ's

---

[6] For example, at one point, the ALJ discusses how there are no records from Ms. Wolfram and no treatment notes from Dr. Mosher after November 2011. R. 42. The ALJ then goes on to state in the next paragraph that the "scant, infrequent and non-descript medical evidence of record simply does not support the severity of limitation alleged by the claimant or identified by Dr. Mosher." R. 42-43. The ALJ's reference to "scant" and "infrequent" refers back to the lack of records from Dr. Mosher after November 2011 and the absence of any records from Ms. Wolfram. Thus, the lack of those records impacts not just the weight the ALJ ultimately decided to give to Dr. Mosher and Ms. Wolfram's opinion, but also the ALJ's analysis of the Claimant's credibility and the medical record as a whole.

[7] A claimant is not required to show good cause for failing to present the evidence to the ALJ. *See Ingram*, 496 F.3d at 1262.

decision erroneous. For the reasons set forth below, the Court finds that the evidence Claimant submitted to the Appeals Council is material and renders the ALJ's decision erroneous.

The ALJ's decision hinges upon the ALJ's determination that Dr. Mosher and Ms. Wolfram's opinion was entitled to little weight. R. 43. Absent good cause, the opinion of a treating physician must be accorded substantial or considerable weight. *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988). The Eleventh Circuit has held:

> Good cause exists when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records."

*Johnson v. Barnhart*, 138 F. App'x 266, 270 (11th Cir. 2005) (unpublished) (quoting *Phillips* v. *Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004)). Thus, good cause exists to give a treating physician's opinion less than substantial weight where the ALJ demonstrates in the decision that the physician's opinion is not bolstered by the evidence in the record, the evidence supports a contrary finding, or the opinion is conclusory or inconsistent with the physician's medical records. *Id*.

Conclusory statements by an ALJ to the effect that an opinion is inconsistent with or not bolstered by the medical record are insufficient to show an ALJ's decision is supported by substantial evidence unless the ALJ articulates factual support for such a conclusion. *See Anderson v. Astrue,* No. 3:12-cv-308-J-JRK, 2013 WL 593754, at *5 (M.D. Fla. Feb. 15, 2013) (ALJ must do more than recite a good cause reason to reject treating physician opinion and must articulate evidence supporting that reason) (citing authority); *Poplardo v. Astrue*, No. 3:06-cv-1101-J-MCR, 2008 WL 68593, at *11 (M.D. Fla. Jan. 4, 2008) (failure to specifically articulate evidence contrary to treating doctor's opinion requires remand); *see also Paltan v. Comm'r of Social Sec.*, No. 6:07-cv-932-Orl-19DAB, 2008 WL 1848342, at *5 (M.D. Fla. Apr. 22, 2008) ("The ALJ's failure to

explain how [the treating doctor's] opinion was 'inconsistent with the medical evidence' renders review impossible and remand is required.").[8]

As set forth above, the ALJ's four reasons for giving their opinion little weight are: (1) Claimant's treatment was sporadic as the last treatment record from Dr. Mosher was in November of 2011 and there are no treatment records from Ms. Wolfram; (2) the overall medical record does not support their "extreme" opinions; (3) the opinion is on a check-box form without a narrative report containing specific clinical findings; and (4) Dr. Mosher apparently relied too heavily on the Claimant's subjective complaints, which are not credible. R. 43. The first reason, that Claimant' treatment was sporadic because there is no evidence that treatment continued after November 2011 is completely refuted by Claimant's submission of new evidence to the Appeals Council. R. 661-85. The ALJ's second reason, that the medical record does not support their opinions, is wholly conclusory. The ALJ's third reason, that the opinion is simply a check-box form, which did not "contain[ ] specific clinical findings" (R. 43) is not entirely accurate because Dr. Mosher and Ms. Wolfram wrote that Claimant's "severe anxiety prevents her from performing in the [identified] areas." R. 614. Thus, they did, in fact, provide a specific, albeit brief, clinical finding in support of their opinions. R. 614. The ALJ's fourth reason, that Dr. Mosher and Ms. Wolfram relied too heavily on Claimant's subjective statements, is purely boilerplate and is not supported by any actual evidence in the record. Moreover, the new evidence submitted by

---

[8] It is not uncommon for this Court to be presented with generalized statements from an ALJ that a treating physician's opinion, which contains limitations beyond those found by the ALJ, is inconsistent with the physician's own treatment notes, unsupported by the record as a whole, or fails to document the type of findings one would expect if the claimant were disabled. The Court has routinely rejected such generalized statements as conclusory and insufficient to meet the obligation to establish good cause for giving a treating physician's opinion less than substantial or considerable weight, as well as the obligation to state with particularity the weight given to the physician's opinion and the reasons therefor. *Winschel*, 631 F.3d 1178-79. When such generalized statements are unaccompanied by more specific statements and supporting record citations, the Court is unable to find that substantial weight supports the ALJ's decision. *See Id.*

Claimant contains Dr. Mosher's treatment records from February 16, 2012 through January 15, 2013, all of which show mental status examinations of Claimant. R. 675-79. Thus, even if the ALJ's fourth reason were not boilerplate, the new evidence submitted by Claimant renders it erroneous.

Based on the forgoing, the Court concludes that with the submission of Dr. Mosher and Ms. Wolfram's treatment records, the ALJ's determination to give little weight to their opinion is not supported by substantial evidence, there is a reasonable possibility that the new evidence will change the administrative result, and the ALJ's final decision is erroneous. Accordingly, the case will be **REVERSED**.

## IV.   REMEDY.

Claimant, in wholly conclusory fashion, requests a remand for an award of benefits. Doc. No. 19 at 35. A remand for an award of benefits is appropriate only in two narrow circumstances: (1) where the Commissioner has already considered all of the essential evidence and it is clear that the claimant is disabled beyond a doubt; and (2) where the claimant has suffered an injustice. *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993); *Walden v. Schweiker*, 672 F.2d 835, 840 (11th Cir. 1982). As the ALJ has clearly not considered all of the essential evidence, the first avenue for an award of benefits is inappropriate, and the Claimant has not suggested any injustice. Accordingly, a remand for further proceedings is appropriate.

## V.   CONCLUSION.

For the reasons stated above, the case must be remanded to the Commissioner for further proceedings.[9] Accordingly, it is **ORDERED** that:

---

[9] The final decision must be remanded and, therefore, it is unnecessary to Claimant's additional arguments (*see supra* n.1). *See Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir. 1983).

1. The final decision of the Commissioner is **REVERSED and REMANDED** for further proceedings pursuant to sentence four of Section 405(g); and

2. The Clerk is directed to enter judgment in favor of the Claimant and against the Commissioner, and to close the case.

**DONE and ORDERED** in Orlando, Florida on January 29, 2016.

_____
GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

Electronic copies to:
Counsel of record

Copies by Regular U.S. Mail to:
The Honorable Anne Sharrad
Administrative Law Judge
c/o Office of Disability Adjudication and Review
SSA ODAR Hearing Office
Chicago NHC
200 West Adams
Chicago, IL 60606